UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| K. PETROLEUM, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil No: 11-20-GFVT |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| A.D.I.D. CORPORATION, et al., | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendants, A.D.I.D. Corporation and Franklin Delano Proffitt, seek summary judgment on all of the claims alleged by the Plaintiff, K. Petroleum. [R. 15.] Conversely, K. Petroleum believes its entitled to partial summary judgment on those exact claims. [R. 21.] For the reasons that follow, K. Petroleum's motion will **DENIED**, and Defendants' motion will be **GRANTED**.

**I.**

According to the Complaint, this dispute arises out of competing claims to an interest in approximately ten acres of property owned by Franklin Proffitt. [R. 1.] In 1987, he and his wife, Zella, acquired the property by two deeds. [R. 15-5.] Residing on that property were two natural gas wells, one referred to as Crook Heirs # 1, and the other, a non-producing well that has not been used in decades. [*Id.*; R. 22-1.]

Twelve years later, on January 13, 1999, K. Petroleum executed a natural gas and oil leasehold with Proffitt, which covered approximately 130 acres in an area called Nineva Creek in Laurel County, Kentucky. [R. 15-3, 15-5.] That 130-acre parcel of land

covered the ten-acre tract on which the wells were constructed. [*Id.*] Pursuant to that 1999 Lease, Proffitt was granted access to Crook Heirs for the expressed purpose of producing oil and gas. [*Id.*] During his deposition testimony, Proffitt admitted that although he held himself out as the owner of the entire 130-acre parcel, the property had never been properly deeded to him, he just claimed control over it based on discussions with the actual heirs of the property. [R. 1, 15-3, 22-1.]

Although K. Petroleum installed equipment and a meter box on the property that same year, an Oil and Gas Production Report, generated by the Kentucky Geological Survey, shows that production of gas began at the well in January of 2001. [R. 15-4.] On July 13, K. Petroleum executed an agreement with the prior operator of the well, by which it became officially recognized by the Kentucky Department of Mines and Minerals as the well operator. [R. 22-3.] According to the report, there was no production of oil at the well, and by the beginning of 2003, production of gas had ended as well. [R. 15-4.] Additionally, the Report shows the well being inactive – "shut in" – through December 2008. [*Id.*]

Starting in 2006, Mr. Proffitt received new offers to lease the land for the purpose of using the well. [R. 22-1.] He first decided to enter an agreement with TCG, Inc. [*Id.*] TCG started preparing to produce oil and gas at the well, but soon faced financial difficulties and was unable to fulfill its contractual obligation. [*Id.*] Proffitt later entered into an agreement with Ten-X Gas Corporation, but it too failed to keep its commitment. [*Id.*]

After repeated attempts to lease the property, Proffitt entered discussions with Marshall Holbrook, president of A.D.I.D. [*Id.*] Holbrook waited until the Ten-X lease

2

expired and on January 9, 2010 executed an oil and gas lease for the property with Proffitt and his wife. [*Id.*; R. 15-5.] That 2010 Lease gave A.D.I.D. access to the Crook Heirs well and authorized A.D.I.D. to operate it. [*See* R. 15-1, 15-2.] A.D.I.D. recorded its 2010 Lease on February 2, 2011. [R. 15-2.]

A few months earlier, on December 22, 2010, an attorney representing K. Petroleum wrote a letter to an attorney for A.D.I.D. notifying A.D.I.D. of K. Petroleum's 1999 Lease, and its intent to "file a trespass and conversion action against [it]" because A.D.I.D. was operating the Crook Heirs well without proper bonding. [R. 16-3.] A few days later, A.D.I.D.'s attorney responded that it was his understanding after speaking with A.D.I.D. that it had a valid lease with the property owner, and that K. Petroleum no longer had a lease, and had not paid royalties to Proffitt. [R. 16-2.] The attorney also stated that A.D.I.D. was "willing to take over the bond from [K. Petroleum]." [R. 16-2.] Enclosed with the response was a Well Transfer form to effectuate the transfer. [*Id.*]

These circumstances resulted in K. Petroleum filing its Complaint in this Court on January 18, 2011. [R. 1.] It alleges that Proffitt "wrongfully attempted to oust [K. Petroleum] and . . . otherwise breached the terms of the subject lease." [*Id.*] It further alleges that Proffitt "attempted to wrongfully and intentionally possess, seize and convert equipment and other personalty owned by [K. Petroleum]."

It also makes accusations against A.D.I.D. asserting that it has intentionally and improperly interfered with the performance of the 1999 Lease and K. Petroleum's contractual relations. [R. 1.] Further, A.D.I.D. is alleged to have wrongfully ousted K. Petroleum from the property, interfered with its operation of the well and pipeline, and attempted to possess, seize, and convert equipment and property owned by K. Petroleum.

3

[*Id.*] Defendants responded denying the allegations and asserting their own counter claim alleging tortious interference with Proffitt and A.D.I.D.'s business relationship. [R. 5.]

## II.

Summary judgment is appropriate where "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate there is a genuine issue. *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact. It must present

significant probative evidence in support of its opposition to the motion for summary judgment." *Hall Holding*, 285 F.3d at 424 (internal citations omitted).

Finally, the trial court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact" and "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). In applying the summary judgment standard, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Liberty Lobby*, 477 U.S. at 255).

### III.

#### A.

Defendants argue in support of its Motion that K. Petroleum does not have a valid lease because it was not submitted as an affidavit to its Response, lacks a sufficient description of the property, and was not properly recorded. [R. 15-7, 17.]

Defendants contend that K. Petroleum's 1999 Lease should be viewed with skepticism because of the manner in which was submitted. [R. 17.] K. Petroleum decided to include it as part of its Rule 26 Disclosures. [R. 17.] The Court is permitted to review "discovery and disclosure materials on file" when considering this type of motion. Fed. R. Civ. P. 56(c)(2). The Court finds that K. Petroleum's form of submission is appropriate and the 1999 Lease cannot be invalidated on this ground. *See* Fed. R. Civ. P. 26(a)(1)(A)(ii) ("a copy—or a description by category and location—of all documents,

5

electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses...").

Defendants further charge that the 1999 Lease does not have a sufficient property description complying with the statue of frauds. [R. 15-7.] Under Kentucky law, "'the construction and interpretation of a contract, including questions regarding ambiguity, are questions of law to be decided by the district court.'" *Westlake Vinyls, Inc. v. Goodrich Corp.*, 523 F.Supp.2d 577, 582 (W.D. Ky. 2007) (quoting *Frear v. P.T.A. Indus.*¸103 S.W.3d 99, 105 (Ky. 2003) (internal citation omitted)); *see also Jones v. Bank of Harlan*, 2012 WL 115586, *4 (E.D. Ky. 2012). "The conveyance or assignment of a working interest in an oil and gas lease constitutes an interest in real estate within the meaning of the statute of frauds." *Owen v. Dayson*, 562 S.W.2d 647, 648 (Ky. Ct. App. 1977). Kentucky's statute of frauds provision, KRS 371.010 reads in pertinent part:

> [n]o action shall be brought to charge any person:
>
> …
>
> Upon any contract for the sale of real estate, or any lease thereof for longer than one year;
>
> …
>
> Unless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum note thereof, be in writing and signed by the party to be charged therewith, or by his authorized agent.

KRS 371.010(6). It is further recognized under this provision that "a writing is required to be sufficient in itself to identify the property sold. Generally, the description is regarded as sufficient if it identifies the property when it is read in the light of the circumstances of possession or [ownership] and of the situation of the parties when the

6

negotiations took place and the writing executed." *Burton v. Lafavers*, 254 S.W.2d 730, 731 (Ky. App. 1953)[1].

Defendants assert that "it is obvious the [1999 Lease] claimed by [K. Petroleum] must fail for lack of a description." [R. 15-7.] They argue that K. Petroleum's description of approximately 130 acres on Nineva Creek[2] in Laurel County, Kentucky cannot be used to locate the property. [*Id.*] They give two examples of leases which were invalidated by Kentucky's high court because of insufficient descriptions. One description provided "the 1,400 acres in Wayne County, which we have had some correspondence in regard to," *Beckett-Iseman Oil Co. v. Backer*, 165 Ky. 818, 178 S. W. 1084, 1085 (Ky. App. 1915), and the other read, "their farm of 53 13/16th acres," *Hall v. Cotton*, 167 Ky. 464, 180 S. W. 779, 780 (Ky. App. 1915).

In *Beckett-Iseman*, the Court explained that "[i]t is the rule in [Kentucky] that the subject-matter of a contract must be contained in the contract, and the writing or memorandum relied on must afford the means of identification. Unless it does, the contract is within the statute of frauds." *Beckett-Iseman*, 178 S.W. at 1085. The court was troubled that the writing was silent as to the particular location of the 1,400 acres and noted that the writing "[did] not mention the owner of the lands, or identify them as belonging to any particular party…" [*Id.*]

In *Hall*, the court held the description insufficient because "it did not specify the county or state in which the land is situated; it [did] not refer to it as the land conveyed to him by 'so and so'; it [did] not refer to it as the farm known as the 'Jones' or 'Smith' farm, it [did] not say that it is near any town or village, or any well known object…"

---

[1] The Kentucky Court of Appeals was the highest court in the state until 1976 when the Kentucky Supreme Court was formed. *See Woodward v. Kentucky*, 949 S.W.2d 599, 600-01 (Ky. 1997).
[2] Nineva Creek has since been renamed Southern Oak Road. [R. 22-1.]

7

*Hall*, 180 S. W. at 780. The court also gave examples of past descriptions it had upheld. *Id.* For example, in *Hyden v. Perkins*, 83 S.W. 128, 130 (Ky. App. 1904), the court held sufficient a contract embracing a description of a "farm of about twenty acres known as the Vaught farm." In *Tyler v. Onzts*, 20 S. W. 256, 257 (Ky. App. 1892), "lot No. 4, block 9, N. E., in Middlesboro, Kentucky," was upheld. Also, in *Price v. Hays*, 139 S. W. 810, 811 (Ky. App. 1911), a description stating "about 150 acres of land near Otter Creek station, one mile N. of Rineyville, Hardin county, Kentucky, on I. C. R. R" was upheld.

  K. Petroleum urges this Court to arrive at the intent of the parties in determining the sufficiency of the lease description. [R. 22.]  In *Anderson v. United Fuel Gas Co.*, the Kentucky Supreme Court upheld a lease description that described the lands by reference to adjoining owners, and referred to a 1911 deed as the lessors' source of title. *Anderson v. United Fuel Gas Co.*, 351 S.W.2d 520, 521 (Ky. App. 1961). The description, however, was flawed. *Id.* The tract claimed by the lessees to be covered by the lease could not be identified by reference to the lands of the adjoining owners named in the description because the 1911 deed did not cover the land claimed. *Id.*

  The court acknowledged that the description in the lease might not have been sufficient on its face, but it was capable of being made sufficient between the parties to the lease. *Id.* at 521-22. Thus, the court determined that the parties were in complete agreement regarding the land covered by the lease. *Id.* at 521. "The lessors put the lessees in possession of the tract that the parties intended the lease to embrace." *Id.*

  In *Bates v. Harris*, 138 S.W. 276, 277 (Ky. App. 1911), the court acknowledged the role of parol evidence in property descriptions, stating, "frequently it is the case that

8

application of apparently vague descriptions must be by parol testimony, which puts before the court the facts and circumstances surrounding the parties when the contract was made or is to be executed, that its terms may be interpreted by the light from such surroundings." In *Wheeler v. Keeton*, 242 S.W.2d 1013, 1016 (Ky. 1951) the Kentucky Supreme Court revisited its "liberal" inclination to uphold "vague and indefinite" descriptions. It reaffirmed its commitment to allow parol evidence to "designate the subject matter already identified in the minds of the parties." *Id.*

Given the wide range of descriptions accepted by Kentucky courts, *see Wheeler*, 242 S.W.2d at 1016, acknowledgement by the Defendants that the Crook Heirs well is the only producing well on the ten-acre tract [R. 15-1, 22-1,], and K. Petroleum's documented operation of the well [R. 15-4], there is enough evidence present to conclude a valid lease existed between K. Petroleum and Proffitt. *See Anderson*, 351 S.W. at 521-22.

Determining the existence of a valid lease, however, does not mean that the 1999 Lease is still enforceable today. Defendants contend that the 1999 Lease is invalid because it was not recorded. [R. 15-7.] They argue that the only valid lease is A.D.I.D.'s lease which was recorded "without notice of any leasehold interest of the plaintiff." [*Id.*] To support their proposition, Defendants advise the application of four different statutes.

The first, KRS 382.080(1), "seeks to redress the evils of prior unrecorded deeds, mortgages, and leases by making them ineffectual as against subsequent bona fide purchasers." *Sirls v. Jordan*, 625 S.W. 2d 106, 107-08 (Ky. App. 1981). It reads as follows:

> No deed conveying any title to or interest in real property, or lease of oil, gas, coal or mineral right and privilege, *for a longer time than five (5) years*, nor any

9

> agreement in consideration of marriage, shall be good against a purchaser for a valuable consideration without notice thereof, or any creditor, unless the deed is acknowledged by the party who executes it, or is proved and lodged for record in the proper office, as prescribed by law.

KRS 382.080(1) (emphasis added).

The second provision proffered by Defendants, KRS 382.100 provides:

> Any contract for the sale of real property or any interest therein, when acknowledged or proven as deeds are required to be, *may be recorded in the county in which the property is situated*, in the same offices and books in which deeds are recorded, and the record of any such contract recorded, from the time of lodging the contract for record, be notice of the contract to all persons.

KRS 382.100 (emphasis added). Defendants also assert that the general recording statute for deeds and mortgages, KRS 382.010(1), and KRS 382.270 apply. KRS 382.110(1) states the following:

> All deeds, mortgages and other instruments required by law to be recorded to be effectual against purchasers without notice, or creditors, shall be recorded in the county clerk's office of the county in which the property conveyed, or the greater part thereof, is located.

KRS 382.110(1)[3]. KRS 382.270 states:

> No deed or deed of trust or mortgage conveying a legal or equitable title to real property shall be lodged for record and, thus, valid against a purchaser for a valuable consideration, without notice thereof, or against creditors, until such deed or mortgage is acknowledged or proved according to law. However, if a deed or deed of trust or mortgage conveying a legal or equitable title to real property is not so acknowledged or proved according to law, *but is or has been otherwise lodged for record*, such deed or deed of trust or mortgage conveying a legal or equitable title to real property or creating a mortgage lien on real property shall be deemed to be validly lodged for record for purposes of KRS Chapter 382, and all interested parties shall be on constructive notice of the contents thereof. As used in this section "creditors" includes all creditors irrespective of whether or not they have acquired a lien by legal or equitable proceedings or by voluntary conveyance.

---

[3] Defendants incorrectly identified this as "KRS 382.010(1) in their Motion. [R. 15-7.] KRS 382.110(1) was formally referred to as Section 495 Ky. Stats. *Seat*, 293 S.W. at 989.

10

KRS 382.270[4] (emphasis added). K. Petroleum argues that these provisions are facially inapplicable to its interest in the property. [R. 16.]

In *Seat v. Louisville and Jefferson County Land Co.*, 293 SW 986 (Ky. App. 1927), the Kentucky Court of Appeals discussed the application of the aforementioned statutes to property interests. The court opined that "[a]ll of the sections of the statute relating to the recording of deeds, mortgages, and other instruments affecting the title to real estate must be read and considered together." *Seat*, 293 S.W. at 989. The Court posited that it was the "deliberate purpose of the [Kentucky] General Assembly to require the recording of any instrument which affects in any way the title to real estate…" *Id.*

The appeals court also remarked on the "innocent purchaser of real estate," stating that he or she "will not be prejudiced or affected by the provisions of any [written] [] instrument unless it has been recorded as required by law, unless he has actual notice of its contents." *Id.* The court continued, "the recording of any instrument which conveys . . . any interest . . . or which places a restriction or burden upon any real estate is of the upmost importance and when such instrument is recorded it is notice to the world, and every one thereafter purchasing property the title to which is affected by the instrument is bound by the provisions of the instrument." *Id.*

The appeals court's reasoning has some merit. Reading and considering together all the statutes "relating to the recording of deeds, mortgages and other instruments affecting the title to real estate" [*See* R. 15-7 (citing *Seat*, 293 S.W. at 989)], suggests that K. Petroleum should have recorded their 1999 Lease to have any right to bring this action. [*Id.*] Furthermore, KRS 446.080 directs that "[a]ll statutes of this state shall be

---

[4] Formally referred to as Section 496 Ky. Stats. *Seat*, 293 S.W. at 989.

11

liberally construed with a view to promote their objects and carry out the intent of the legislature…" KRS 446.080.

On the other hand, K. Petroleum contends that A.D.I.D. had notice of the 1999 Lease before it recorded its interest in the property. [R. 16, 22.] In *Francis Co. v. Lincoln Federal Bldg. & Loan Association*, the Kentucky Supreme Court opined that "'[o]rdinarily, the purchaser of property takes subject to a lease . . . where he has actual or constructive notice of it, even though it is unrecorded, and the rights and liabilities existing between the grantee and the lessee are the same as those existing between the grantor and the lessee.'" *Francis Co. v. Lincoln Federal Bldg. & Loan Assoc.*, 445 S.W.2d 153, 155 (Ky. 1969) (quoting 51 C.J.S. Landlord & Tenant § 258(2)).

Ultimately, the record does not resolve and the Court need not resolve the issue of whether K. Petroleum recorded its 1999 Lease. This is the case, because the record suggests that A.D.I.D. had notice of the Lease before it purchased its interest in the property. Proffitt, while testifying at his deposition, was asked whether he told Holbrook about the K. Petroleum lease and he responded affirmatively. [R. 22-1.] He was also asked whether he told Holbrook about K. Petroleum's operating bond on the property, and again responded affirmatively. [*Id.*] On cross-examination by Mr. Saunders, attorney for A.D.I.D., Proffitt backed away from his former statements and asserted instead that he only informed Holbrook that K. Petroleum was on the property, but did not inform him of the 1999 Lease. [*Id.*] Proffitt's contradictory statements regarding his conversation with Holbrook make it impossible for this Court to determine conclusively that A.D.I.D. did not have notice of the prior lease. Thus the Court refuses to grant summary judgment by applying the KRS notice and recording provisions.

12

## C.

Additionally, Defendants contend that K. Petroleum's 1999 Lease expired by its terms. They allege that K. Petroleum "has not drilled any wells upon the property and cannot be said to be producing natural gas pursuant to the lease." [R. 15-7.] They further submit that K. Petroleum has abandoned its leasehold interest. [*Id.*] With respect to this assertion, they argue that it "has produced no natural gas since at least December, 2001, has long ago removed its fixtures and equipment and has shown no interest in claiming the right to produce oil and gas from the property for almost ten years." [*Id.*]

K. Petroleum's filings fail to address Defendants' claim that the 1999 Lease has terminated by its own terms. Its characterization of Defendants' argument is that the 1999 Lease was "forfeited because it terminated on its own terms." [R. 16.]

Forfeiture and termination are two distinct grounds by "which an oil and gas lessee may lose his interest in a lease." *Hiroc Programs, Inc. v. Robertson*, 40 S.W.3d 373, 377 (Ky. App. 2000). Forfeiture is the breach of an express or implied covenant, condition or obligation of a lease. *Hiroc*, 40 S.W. 3d at 377 (quoting C*ameron v. LeBow, Ky.*, 338 S.W.2d 399, 406 (1960)). Termination, on the other hand, occurs when "the primary term of an oil and gas lease has run and the lease provides for an extension for so long as oil or gas is produced in paying quantities, the lease will *ipso facto* terminate whenever production or development ceases for an unreasonable period of time." *Id.*

In its Complaint, K. Petroleum avers that it "has complied with all terms and obligations of [its 1999 Lease]." [R. 1.] Thus to refute the termination claim, K. Petroleum should provide the Court with evidence that it is producing oil, gas, casing-

13

head gas, or casing-head gasoline or operations for drilling are continuing pursuant to the lease terms. [R. 15-3.]

In *Bebedum-Trees Oil Co. v. Davis*, 107 F.2d 981 (6th Cir. 1939) the Sixth Circuit took up a similar case involving competing oil and gas leases on the same piece of property. 107 F.2d 981. On May 17, 1930, E.W. Sedman leased an interest in his property to Benedum-Trees Oil Company, "for the purpose of mining, operating for oil and gas and laying pipe lines building tanks, power stations and structures thereon to produce, save and store oil and gas…" *Id.* at 984. The lease was for one year unless production and development continued past that term. *See id.* A well was completed on the property in September, 1930, producing gas, but no oil. *Id.* It was eventually capped. *Id.*

On October 19, 1935, Sedman, without notifying Benedum, leased the premises to Ross H. Williams for the exact same purpose. *Id.* After Williams obtained the lease, he entered on the premises, removed Benedum's lock from the capped wells, substituted his own and placed on the fence around them signs stating no trespass. *Id.* Benedum filed actions asking the lower court to quiet title to the premises. *Id.* The lower court dismissed the actions and Benedum opted to appeal. *Id.*

The question before the court was whether an implied obligation existed to produce gas and oil in paying quantities, when there was no expressed statement to that effect. *Id.* at 986. Review of the record showed "that more than nine years [had] elapsed since the well on each of the leases" was drilled and capped and during that period none of the lessors had received any rentals for the use and occupation of their properties. *Id.* The court noted that normally a lessor is protected by the payment of minimum rentals or

14

royalties, "but where no such provision is made in the lease nor any payments made, its termination is implied after a reasonable time and equity ends such contracts for non-development or unreasonable delay in finding a market." *Id.* Thus the court decided that "because of the long delay in finding a market for the gas, the leases terminated," and Sedman was free to negotiate the leasing of his property to Williams. *Id.*

The court's reasoning applies here. Even if this Court draws all reasonable inferences in favor of K. Petroleum, there is not a sufficient explanation supported by the record for its inactivity at the well. *Logan*, 259 F.3d at 566 (citing *Liberty Lobby*, 477 U.S. at 255). It is clear from the record that by the beginning of 2003 the well was inactive. [R. 15-4.] Under K. Petroleum's control, it produced neither oil nor gas. [*Id.*] Like Sedman, Proffitt was not receiving the benefit of his bargain. The only monetary benefit he realized came in the form of two checks, and those were received in 1999. [R. 15-5.] Moreover, in 2002, it removed equipment and a meter box from the well. [*Id.*; 15-7.]

K. Petroleum does not contend that other payments were made to Proffitt nor does it account for or dispute its prolonged absence from the property. [R. 16, 22.] Instead, it faults Proffitt for making only one attempt at communication with it in the last five or six years. [R. 22.] Considering it has not offered any significant probative evidence, K. Petroleum's arguments and responses regarding this issue are insufficient to meet its burden under the summary judgment standard as a non-moving party. *See Hall Holding*, 285 F.3d at 424.

Abandonment of an oil and gas lease is an intentional and voluntary relinquishment of the lease. *Hiroc*, 40 S.W. at 377 (citing *Fuqua v. Chester Oil Co.*, 246

15

S.W.2d 1007, 1008 (1952). In their Motion, Defendants cite examples from different cases in which Kentucky courts have determined an oil and gas lease was abandoned. [R. 15-7.] In *Wilson v. Wilson*, 133 S.W.2d 722 (Ky. 1939), the Kentucky appeals court held that a lessee who waits nine months before attempting to remove fixtures on the lessor's property forfeits the fixtures and they become the property of the lessor. *Id.* at 723. In *B&B Oil Co. v. Lane*, 249 S.W.2d 705 (Ky. 1952), the Kentucky Supreme Court held that an oil and gas lease had been abandoned when the lessee failed to operate it for more than four years. *Id.* at 706. In *Tanner v. Reeves*, 249 S.W. 2d 526, the court held that a lease not operated for more than a year constituted an abandonment. *Id.* at 528. There, the court went on to say that "[t]he significant fact is the complete cessation of operations for more than 18 months prior to the trial of the actions, accompanied by removal of equipment and a practical disclaimer by the lessee of the intent to invest any more money in the leases." *Id.*

In *Monarch Oil & Gas Co. v. Hunt*, 235 S.W. 772 (Ky. App. 1921) the court explained:

> An oil well from which no oil is produced is, as to the lessor waiting for royalties, as no well at all . . . If after drilling a well in which there is oil or gas the lessee goes away and leaves it for an unreasonable time without an effort to further develop the lease or market the oil, it will amount to an abandonment of the lease unless the lease is kept in force by the payment of rentals or in some other way…

*Id.* at 773. Proffitt remarks in his affidavit that he "received several checks for production in the year 1999," but received none after that period of time. [R. 15-5.] He further avers that in 2002, K. Petroleum's "employees came to the Property and dismantled all equipment and took the meter box from the well." [*Id.*] These actions are

16

inconsistent with the actions of someone interested in maintaining oil and gas production or development.

Again, K. Petroleum does not articulate a well-reasoned response. [R. 16, 22.] It has presented no set of facts proving that that the 1999 Lease has not terminated by its terms or been abandoned through their inactivity. *Hiroc*, 40 S.W. at 377.

### D.

Turning to K. Petroleum's Motion for Partial Summary Judgment, it argues that it is entitled to summary judgment on all of its claims. [R. 22.] It alleges breach of its 1999 Lease, conversion of equipment, ouster, and intentional and improper interference with the performance of its lease. [R. 1.]

K. Petroleum admits that most of its arguments were previously made in its response to Defendants' motion for summary judgment. [R. 22.] Defendants, for their part, treat this as a supplemental response to its motion, opting to summarize the arguments it made therein. [R. 24.] Considering that the only substantive difference between this Motion and its response is the deposition testimony of Proffitt, Holbrook, and Khorrami [R. 22-2, 22-3], K. Petroleum's Motion will be denied. K. Petroleum's filings do not "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See also Browning v. Dep't of Army*, 436 F.3d 692, 695 (6th Cir. 2006).

### IV.

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

17

    (1)    K. Petroleum's Motion for Partial Summary Judgment [R. 21] is **DENIED**.

    (2)    Defendants' Motion for Summary Judgment [R. 15] is **GRANTED**; and

    (3)    Judgment will be entered contemporaneously and consistent with this Memorandum Opinion and Order.

This 30th day of March, 2012.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge